■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANTHONY ZAPPACOSTA, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Suffolk County, rendered June 28, 1979, convicting him of grand larceny in the second degree (23 counts), after a nonjury trial, and imposing sentence. Judgment reversed, on the law, and new trial ordered. The facts have been considered and are determined to have been established. In the most unusual circumstances of this case, we believe that the defendant's motion that the court recuse itself, thereby allowing the defendant to proceed with a nonjury trial before another Justice of the Supreme Court, should have been granted. Appellant was indicted for multiple counts of forgery and grand larceny stemming from the "bilking" of hundreds of thousands of dollars from a corporation of which appellant's codefendant was a trusted employee. Prior to appellant's trial, his codefendant entered a guilty plea and was sentenced to the maximum period of incarceration

allowed by law. In the course of the plea colloquy, the court actively elicited statements from the codefendant which incriminated the appellant. By itself, this would generally not necessitate a court to recuse itself from trying the still pending indictment. The contrary result is reached here because of several extenuating circumstances. The appellant herein sought to exercise his constitutional right to be tried by a Judge rather than by a jury (NY Const, art I, § 2; *People v Davis,* 49 NY2d 114, 119; *People v Duchin,* 12 NY2d 351). He further sought to have the case assigned for trial to a Justice other than the one who had taken his codefendant's guilty plea and had determined his own challenge to the sufficiency of the indictment. This latter application was denied. Appellant was placed upon the horns of a dilemma of choosing either to be tried by a jury or tried by a Judge whom the appellant perceived to be biased against his cause. Although the instant record leaves no doubt as to the trial court's actual impartiality and total absence of any real prejudice, we must be constantly vigilant to avoid even the appearance of bias which may erode public confidence in the judicial system as quickly as would the damage caused by actual bias *(People v Corelli,* 41 AD2d 939; *People v Vetrano,* 42 AD2d 987). Thus, if the appellant's perception of bias was made in good faith and based upon identifiable factors, it was improper to circumscribe the exercise of his constitutional right to waive a jury trial by compelling him to accept trial by the challenged Judge when there were other Justices available (cf. *United States v Bryan,* 393 F2d 90, 91). Of significance in this case is that appellant's codefendant was his wife. The special nature of a marital relationship gives added credence to her statements which incriminated the appellant. Such statements were not necessary to the taking of her plea and necessarily constituted information on the ultimate issue of appellant's guilt which the court, as trier of fact, would not otherwise have had (cf. 22 NYCRR 33.3 [c] [1] [i]). The marital relationship is also significant in terms of the circumstances of the criminal conduct. There is no question that the wife was, as the court so found, the primary mover of the criminal scheme and that only the wife committed the actual forgeries. The appellant's criminality was largely restricted to opening and drawing on bank accounts for the purpose of negotiating the forged checks. To some extent, the appellant's guilt is based upon the proper inference from the fact of large amounts of money available to the appellant and his wife, thereby refuting the appellant's claim that he was a mere dupe. Such circumstances suggest an analogy to the well-established rule that an individual who withdraws a guilty plea may request to be tried before a different Judge *(People v Selikoff,* 35 NY2d 227, 239, cert den 419 US 1122). In view of the information incriminating appellant, which the court possessed as a result of the wife's guilty plea, the appellant is in an analogous position to the individual who withdraws a guilty plea and proceeds to trial. There is no question that a Judge, by virtue of his learning, experience, and judicial discipline, is uniquely capable of making determinations on the admissibility of evidence and still make an objective determination when sitting as the trier of a fact *(People v Brown,* 24 NY2d 168, 173; *Stephens v Le Fevre,* 467 F Supp 1026, 1030). Consequently, there is no general prohibition against the same Judge conducting a bench trial as conducted preliminary hearings on the admissibility of evidence *(People v Brown, supra; People v De Curtis,* 63 Misc 2d 246, affd 29 NY2d 608). However, making a necessary determination on the admissibility of evidence, and reviewing collateral issues as part of presiding over a single particular proceeding, is qualitatively different from ignoring incriminating evidence obtained in a related, but separate, criminal proceed-

ing. The difference becomes paramount when the defendant has exercised his right to be tried by a Judge rather than a jury. Rather than simply being the arbiter of the law, the Judge who is possessed of incriminating information becomes the trier of fact in a trial in which the incriminating statements may not be admissible. The danger of prejudice is especially apparent, when, as here, the underlying criminal transaction is factually detailed and complex. Even the most learned Judge would have difficulty in excluding all such information from his subconscious deliberations (cf. *People v Haas,* 105 App Div 119, 122). It is significant that in denying the appellant's motion to dismiss the indictment for insufficiency, the court, having thoroughly reviewed the Grand Jury minutes, referred to statements made by appellant's wife and to a particular transaction which, although the subject of part of the wife's guilty plea, was not part of the charges against the appellant. The court's reference to such information may well have caused appellant to fear that his cause was already lost. A review of the amalgam of peculiar circumstances results in a conclusion that appellant's application was reasonably made in good faith. Sensitive to the imperative that we avoid any situation which allows even a suspicion of partiality (cf. *United States v Bryan,* 393 F2d 90, 91, *supra; Corradino v Corradino,* 48 NY2d 894, 895) we believe that the public interest requires that the appellant's recusal motion should have been granted thereby giving full effect to the appellant's exercise of his constitutional right to waive a jury trial. Therefore, the judgment of conviction should be reversed. We have considered the other issues raised on appeal and find them to be without merit. Rabin, J. P., Gulotta, Cohalan and Margett, JJ., concur.